UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GREAT AMERICAN ALLIANCE
INSURANCE COMPANY,

           Plaintiff,

  -against-

GREATER NEW YORK MUTUAL
INSURANCE COMPANY,
individually as an assignee of
MADISON 79 ASSOCIATES, INC.
and FABIAN VINICIO SANCHEZ,

           Defendants.

**MEMORANDUM AND ORDER**
Case No. 23-cv-6493

---

*Appearances:*
*For the Plaintiff:*
JUSTIN BOES
KATHERINE E. TAMMARO
MARK ROBERT VESPOLE
Wilson Elser Moskowitz Edelman &
Dicker, LLP
7 Giralda Farms, Suites 100/110
Madison, NJ 07940

MATTHEW MAJOR
Lydecker
One Evertrust Plaza, Suite 701
Jersey City, NJ 07302

*For the Defendants:*
ELIZABETH H ROHAN
MICHAEL S. CHUVEN
Kinney Lisovicz Reilly & Wolff PC
299 Cherry Hill Road,
PO Box 912
Suite 300
Parsippany, NJ 07054

**BLOCK, Senior District Judge:**

    Plaintiff Great American Alliance Insurance Company ("Great American") moves to dismiss the counterclaims brought by defendant Greater New York

Mutual Insurance Company ("GNY") for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the following reasons, Great American's motion is GRANTED.

## I.  Background

This case concerns a dispute between an excess insurer, Great American, and a primary insurer, GNY, over their rights and obligations in the defense of their mutual insureds. In its Second Amended Complaint ("SAC"), Great American claims that GNY breached its obligations to Great American and their mutual insureds in various underlying actions. In these actions, GNY provided legal liability coverage of up to $1,000,000 and Great American provided excess coverage beyond that to their mutual insureds.

This litigation appears to have primarily arisen out of a dispute concerning the underlying actions *Fabian Vinicio Sanchez v. Madison 79 Associates, Inc., et al*, Index No. 510165/2016 and *Fabian Vinicio Sanchez v. Maxwell-Kates, Inc.*, Index No. 501204/2017 in New York state court (collectively, the "*Sanchez* Action"). Great American alleges that GNY improperly disclaimed coverage of their mutual insureds, Madison 79 and Maxwell-Kates, and has refused to tender its $1,000,000 policy, leaving Great American to pay the entire $3,750,000 settlement. Great American now seeks to recover the $1,000,000 it believes GNY owes and a declaratory judgment that GNY had a duty to defend and a duty to

indemnify in the *Sanchez* action. Great American also alleges breaches of the duty of good faith and fair dealing.

Great American further contends that GNY's improper behavior in the defense of the *Sanchez* action is part of a pattern and practice of breaching duties owed to Great American and their mutual insureds. Great American alleges that GNY has consistently impeded its ability to participate in the defense of their mutual insureds in actions that present possible liability for Great American and that GNY has otherwise mishandled the defense of their mutual insureds, resulting in damages to Great American. Consequently, Great American has brought various claims related to other underlying actions

In response, GNY has brought counterclaims against Great American related to various underlying actions (only two of which overlap with those in the SAC). GNY contends that it is Great American who has consistently impeded the defense of their mutual insureds and breached duties owed to GNY. GNY alleges three causes of action: Breach of Contract/Breach of Implied Covenant of Good Faith (Count I), Breach of Confidentiality (Count II), and violation of General Business Law Section 349 (Count III). Great American now moves to dismiss all GNY's counterclaims.

## II.    Discussion

3

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In reviewing a motion to dismiss, the court accepts as true all well-pled factual allegations and draws all reasonable inferences in the non-moving party's favor. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). "[T]hreadbare recitals of the elements of a cause of action" that are supported by "conclusory statements" and mere speculation are, however, inadequate. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

The Court reviews each of the counterclaim's counts in order, concluding in each instance that dismissal is warranted because GNY has not stated a claim upon which relief can be granted.

    a. <u>Count I</u>

In Count I, GNY claims that Great American interfered with GNY's ability to control the defense as the primary insurer in various underlying actions. In these actions, GNY alleges that Great American retained counsel to represent its interests as an excess insurer in ways that prevented GNY from effectively defending the actions, thereby violating the terms of GNY's insurance policy with their mutual insureds. The basis for GNY's breach of contract claim is that GNY's policies with their mutual insureds include "an obligation by Great American to cooperate with

4

GNY in the defense of those claims against GNY's and Great American's common insureds." Counterclaim, ¶ 119. GNY alleges that Great American breached this policy by failing to cooperate with GNY. GNY cites the following language from its insurance policies as the basis for a breach:

> **1. Insuring Agreement**
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> **SECTION IV – COMMERICAL GENERAL LIABILITY CONDITIONS**
>
> **c.** You and any other involved insured must:
>   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"[.]

Great American moves to dismiss Count I of the counterclaim for failure to state a claim on the ground that no contractual relationship or privity existed between Great American and GNY. GNY responds that privity of contract exists between GNY and Great American and that New York law permits a primary insurer to maintain a breach of cooperation claim against the excess insurer.

A breach of contract action may not be maintained "absent proof of a contractual relationship or privity between the parties" (unless the plaintiff can establish third-party beneficiary rights under a contract). *Stapleton v. Barrett Crane Design & Eng'g*, 725 F. App'x 28, 30–32 (2d Cir. 2018). Here, no contractual

5

relationship or privity exists between GNY and Great American because the GNY insurance policies were a contract between itself and its insureds, not Great American. Great American was not party to those contracts, never agreed to those contracts, and thus had no obligations under them. GNY could theoretically maintain an action against *its insured* for breach of the cooperation provision it agreed to, but it may not maintain an action against Great American because Great American was not a party to those contracts and thus was not bound by the cooperation provision.

GNY contends that the assignment of rights from their mutual insured to Great American makes Great American, for purposes of this litigation, the insured and thus GNY may maintain a breach of contract action against Great American. Great American, however, correctly points out that an assignment of rights from the insured to Great American only occurred in one out of the six cases underlying the counterclaim, the *Sanchez* action.

An assignment of rights in that one case from the insured to Great American could, perhaps, allow GNY to maintain a breach of contract action against Great American for breaches by the insured in the *Sanchez* action. This is because "[a] subrogee acquires all rights, defenses and remedies of the subrogor and is subject to any claims or defenses which may be raised against the subrogor[.]" *Peerless Ins. Co. v. Michael Beshara, Inc.*, 75 A.D.3d 733, 735–36, 903 N.Y.S.2d 833, 835

6

(App. Div. 3rd Dept.). However, GNY does not allege breaches by the insured; instead, it alleges that Great American itself breached the contract by failing to cooperate with GNY. Thus, GNY is not asserting a claim which may be raised against the subrogor (i.e., the mutual insured) but rather is asserting a claim wholly against the subrogee (Great American) for its own actions. Therefore, no such action may be maintained under a theory of subrogation.

     GNY cites a single New York Supreme Court case from over fifty years ago, *Home Ins. Co. v. Royal Indem. Co.*, 68 Misc. 2d 737, 740, 327 N.Y.S.2d 745, 748 (Sup. Ct. 1972), for the proposition that New York law permits a primary insurer to maintain a breach of cooperation claim against the excess insurer. This case is distinguishable and unpersuasive. First, *Home Ins. Co.* involved an underlying action against two different defendants, each with their own insurer. *Id*. at 738. Those separate insurers then disputed how damages should be apportioned between them. *Id*. This is distinct from the present dispute between a primary and excess insurer with a mutual insured. Second, the court in *Home Ins. Co.* asserted, without explanation, citation, or legal analysis, that one insurer owed the other the contractual duty of cooperation. *Id*. at 740. This conclusory, unsupported assertion is insufficient to create a legal basis for GNY's breach of contract claims against Great American in the absence of the foundational requirement of a contractual relationship or privity of contract.

7

Because there is no contractual relationship between GNY and Great American concerning the cooperation provision in GNY's insurance policies with its insureds, GNY may not maintain a breach of contract action against Great American for the supposed breach of a contract term it was not bound by. Count I of the counterclaim therefore fails to state a claim upon which relief can be granted and is dismissed.

    b. Count II

In Count II, GNY alleges that "Great American has breached the mediation privilege, settlement negotiation privilege and the resulting settlement agreements" by setting forth confidential allegations in its complaint in connection with certain of the underlying cases. Counterclaim, ¶¶ 134–37. Great American moves to dismiss Count II of the counterclaim for failure to state a claim on the ground that GNY fails to allege any confidentiality agreement or damages. GNY responds that it has sufficiently pleaded a breach of various confidentiality agreements, one of which it attached to its responsive pleading.

As an initial matter, it is not clear to the Court how GNY can base a claim on the alleged breach of the settlement negotiation privilege (by which it is presumably referring to Fed. R. Evid. 408) and the mediation privilege. *See Savage & Assocs. P.C. v. K&L Gates LLP (In re Teligent, Inc.)*, 640 F.3d 53, 58–59 (2d Cir. 2011) (discussing mediation privilege). These are evidentiary rules, rather than

8

causes of action like breach of contract, and GNY fails to identify any legal basis for its claims of "breach." Accordingly, the Court focuses its analysis on the alleged breach of the settlement agreements, which at least in theory can form the basis for a valid breach of contract action.

GNY alleges that Great American, in disclosing certain details of the settlement agreements in actions underlying the complaint, breached those agreements. In its opposition to the motion to dismiss, GNY submitted as an exhibit one of those alleged settlement agreements ("GNY Ex. A"), specifically from *John M. Lasalandra et al., v. Northeast Capital Group, et al.*, Docket No. MID-L-6487-20 (the "*Lasalandra* action"). This agreement contains a confidentiality clause, which provides in full:

> The terms of this Agreement are confidential information and shall not be disclosed beyond the Settling Insurers, except as necessary to their employees, attorneys, accountants, insurers, reinsurers, brokers, tax advisors, and other business advisors or regulators in the ordinary course of business, or as ordered by a court of competent jurisdiction, or as agreed in writing by and amongst the Settling Insurers, or to enforce the terms of this Agreement.

GNY Ex. A., 6.

The agreement also provides:

> This Agreement shall not be filed with any court or agency unless necessary to enforce its terms and, in such event, only that portion of the Agreement which is necessary for such enforcement may be filed. The Settling Insurers agree that this Agreement may only be used as evidence in a subsequent proceeding in which one of the Settling Insurers alleges a breach of this Agreement.

9

*Id*. at 8.[1]

The terms of the agreement provided by GNY make clear that Great American has not breached the confidentiality provision. The agreement explicitly provides that "[t]he terms of this Agreement are confidential information and shall not be disclosed, except as necessary . . . to enforce the terms of this Agreement." GNY Ex. A, 6. GNY contends that the terms Great American described are confidential, but because Great American alleges a breach by GNY of those very terms, the agreement allowed their disclosure to enforce them. This accords with conclusions reached by courts that have considered similar provisions.

In *Evolution Markets, Inc. v. Alpental Energy Partners, LLC*, 221 F. Supp. 3d 361, 371 (S.D.N.Y. 2016), the court considered a similar counterclaim and concluded that, because the agreement in question "explicitly permitted [the plaintiff] to file an action in a court of law to enforce its rights under that contract," the plaintiff had not breached the confidentiality provision in bringing the action. The court is aware of at least one Second Circuit case that reached the same conclusion. In *Bank v. Verde Energy USA, Inc.*, No. 20-4276, 2021 WL 4097313, at

---

[1] Great American contends that the Court may not rely on the *Lasalandra* settlement agreement in deciding the motion to dismiss because it was not specifically referenced in or attached as an exhibit to GNY's Counterclaim. On a motion to dismiss, a court may consider documents either "incorporated by reference in the complaint" or "where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint[.]" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Both Great American's SAC and GNY's Counterclaim discuss the *Lasalandra* action and its settlement. SAC, ¶¶ 150–60, Counterclaim, ¶¶ 76–84. Count II of the Counterclaim discusses the alleged breach of the confidentiality provisions in the settlement agreements in the underlying cases, which includes the *Lasalandra* action. The Court is satisfied that the counterclaim "relies heavily upon [the] terms and effect" of this settlement agreement, rendering it so integral to the counterclaim that the Court may consider it.

10

\*3 (2d Cir. Sept. 9, 2021), the court explained that, because the agreement permitted disclosure in support of a breach of contract action, the complaining party "was therefore permitted to file the agreement in support of its breach-of-contract claims, and its doing so did not violate, much less void, the confidentiality provision."

Here, Great American did not even go so far as to file the agreement with its complaint. Instead, as it pertains to the *Lasalandra* action, Great American described some general terms in alleging that GNY failed to pay its full policy limit. Complaint, ¶¶ 158–60. GNY does not identify a single case in which disclosing in a complaint some details of a contract with a confidentiality provision for the sole purpose of enforcing that contract gave rise to a breach of confidentiality counterclaim. Thus, because the agreement permits disclosure to enforce its terms, GNY has not made out a claim for breach of confidentiality as to the *Lasalandra* agreement.

As to the other actions underlying the counterclaim, GNY's allegations do not rise above the level of "threadbare recitals of the elements of a cause of action" supported by conclusory statements and mere speculation. *Chavis*, 618 F.3d at 170. In its counterclaim, GNY merely asserts, without explanation, that "Great American has set forth allegations in its pleadings that are confidential," and in doing so has breached resulting settlement agreements. Counterclaim, ¶¶136–37.

11

Aside from the *Lasalandra* agreement, however, GNY has not identified any other specific agreements that Great American has violated, and it is telling that its opposition brief focuses almost exclusively on the *Lasalandra* settlement agreement. Although the Court must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff," *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009), neither the complaint nor the details of the *Lasalandra* agreement permit the Court to draw any reasonable inferences in GNY's favor that Great American has plausibly breached any confidentiality agreement. GNY has therefore failed to satisfy its burden to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Therefore, even accepting GNY's well-pled factual allegations as true and drawing reasonable inferences in its favor, it has not stated a claim for breach of confidentiality.

    c. <u>Count III</u>

In Count III, GNY alleges that Great American violated GBL § 349(a) by engaging in deceptive acts or practices. These deceptive acts or practices include 1) Great American's supposed interference with GNY's "sole control" of the defense of their mutual insureds, and 2) Great American allegedly causing their mutual

insureds to breach their obligations to cooperate with GNY. Great American responds that GNY has failed to state a claim because it fails to allege "(1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012).

To state a claim under GBL § 349, a plaintiff must at a minimum "charge conduct that is consumer-oriented." *N. Y. Univ. v Cont'l Ins. Co.*, 87 NY2d 308, 320 (1995). "Private contract disputes, unique to the parties," are not actionable. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). To constitute consumer-oriented conduct, the "defendant's acts or practices must have a broad impact on consumers at large[.]" *N. Y. Univ.*, 87 N.Y.2d at 320.

Here, GNY seeks to use GBL § 349(a) to litigate what is essentially a private dispute between itself and Great American over how to handle litigation involving their mutual insureds. This is a "private . . . dispute, unique to [these] parties." *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25. GNY has not alleged any conduct on the part of Great American that has "a broad impact on consumers at large[.]" *N. Y. Univ.*, 87 N.Y.2d at 320. Because GNY has not alleged any "consumer-oriented conduct," it has failed to state a claim under GBL § 349(a) and Count III is therefore dismissed.

## III.   Conclusion

For the foregoing reasons, Great American's motion to dismiss GNY's counterclaims is **GRANTED**.

**SO ORDERED.**

                                               /S/ Frederic Block
                                               FREDERIC BLOCK
                                               Senior United States District Judge

Brooklyn, New York
February 3, 2026